IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| T.R., | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | No. 13-2931 |
| | : | |
| COUNTY OF DELAWARE, et. al., | : | |
|     Defendants. | : | |

**M E M O R A N D U M**

**SITARSKI, M.J.**                                                                                    Date:  November 26, 2013

Plaintiff T.R., an adult male resident of Delaware County, brings this action against the County of Delaware, ("the County"); Steve Akpunonu ("Akpunonu"), individually and as the mental health legal specialist of The Delaware County Office of Behavior Health ("OBH"); Donald Havens ("Havens"); and John and Jane Doe, in their individual capacities.[1]  Count I asserts a claim against all defendants under the Fourteenth Amendment for deprivation of procedural due process of law, in violation of the Civil Rights Act, 42 U.S.C. § 1983 ("1983"). Am. Compl. ¶¶ 55-79.  Count II asserts a claim under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794 against the County.  *Id.* ¶¶ 80-92.  Count III asserts a state law claim for legal malpractice against Havens.  *Id.* ¶¶ 93-101.  Presently before this Court is a Motion by the County and Akpunonu to dismiss all of T.R.'s claims.  Havens has also filed a Motion to Dismiss the claims asserted against him.

---

[1] T.R. describes John Doe and Jane Doe as the "unknown employees of OBH, who, like Akpunonu, are responsible for ensuring that proceedings under Section 303 meet statutory and constitutional requirements before such proceedings are presented to the mental health review officer." Am. Compl. ¶ 54.  Since nearly all of the factual claims asserted against the unidentified defendants are also asserted against Akpunonu, I consider the sufficiency of the allegations as to all defendants.

For the reasons that follow, Akpunonu's and Havens' Motions will be GRANTED; the County's Motion will be DENIED.

## I.     FACTUAL BACKGROUND

T.R. was diagnosed with bipolar disorder and depression in 2006.  Am. Compl. ¶ 11.  Since 2007, T.R. has received mental health treatment for his mental illnesses, rendering him unable to work in his profession as a patent attorney.  *Id.* ¶¶ 12-13.  On May 24, 2011, T.R. had a telephone conversation with a psychologist whom he had met with once during the previous week.  *Id.* ¶ 15.  The psychologist instructed him to go to the emergency room for a mental health evaluation.  *Id.* ¶ 16.  T.R. avers that he believed this was unnecessary because he was not suicidal, but he nevertheless agreed that he would go to the hospital the following day for evaluation.  *Id*.  On May 25, 2011, T.R. drove himself to Crozer Chester Medical Center ("Crozer Chester"), a hospital in Delaware County, Pennsylvania that serves as one of the County's two Psychiatric Crisis Centers.  *Id.* ¶¶ 17, 20.

At Crozer Chester, T.R. told the intake nurse that he was having suicidal thoughts, but that he did not intend to commit suicide.  *Id.* ¶ 20.  On the evening of May 25, 2011, T.R. was given papers to sign, evaluated by a hospital psychiatrist, and was involuntarily committed under 50 Pa. Con. Stat. § 7302 ("Section 302") of the Mental Health Procedures Act ("MHPA"), for a period of up to 120 hours.  *Id.* ¶ 21.  T.R. avers that on the following day, May 26, 2011, a psychiatrist and a social worker at Crozer Chester separately informed him that "there would be proceedings concerning further involuntary treatment the following day, although the psychiatrist and social worker differed in their characterizations of whether the proceedings

constituted 'court.'" *Id.* ¶ 23.  On May 26, 2011, the social worker, DeAnna Chiddick, completed Part I of a Request for Certification for extended involuntary commitment under MHPA § 7303 ("Section 303").  *Id.* ¶ 24.  A physician completed Part III of the Section 303 petition.  *Id.*  A Notice of Intent to File a Petition for Extended Involuntary Treatment and Explanation of Rights was never filled out, signed, or executed in T.R.'s Section 303 proceedings.  *Id.* ¶¶ 26-27.

On the morning of May 27, 2011, T.R. and about a dozen other individuals were directed to a waiting room without any explanation as to what was occurring, or what to expect.  *Id.* ¶ 28.  Donald Havens ("Havens") was the attorney appointed to represent all the patients in the waiting room, including T.R., with respect to their Section 303 proceedings.  *Id.* ¶¶ 29-30.  Havens has claimed to represent approximately 12-20 people in Section 303 proceedings "on any given day and as many as 2000 people a year."  *Id.* ¶ 30.  T.R. never spoke to Havens on May 27, 2011, and was unaware that an attorney had been appointed to represent him.  *Id.* ¶ 32.

T.R. was escorted from the waiting room to an office, where he was interviewed by Dr. Theodore Barry, a psychiatrist who performs independent psychiatric examinations at Crozer Chester on behalf of the County.  *Id.* ¶ 33-34.  Dr. Barry evaluates individuals who have been involuntarily committed and makes recommendations to a mental health review officer as to whether the individual should be subjected to continued involuntary treatment under Section 303 of the MHPA.  *Id.* ¶ 34.  Dr. Barry asked T.R. whether he agreed to follow his doctor's treatment plan in lieu of a hearing.  *Id.* ¶ 35.  T.R. understood this to mean that if he consented to continue the treatment plan, he would be discharged and permitted to go home without a hearing.  *Id.* ¶ 36.  T.R. agreed to follow his treatment plan and take his medication.  *Id.* ¶ 37.  Dr. Barry did not

advise him that he could speak to an attorney or have an attorney represent him at a hearing. *Id.* ¶ 38.

Dr. Barry advised the presiding officer that T.R. had waived his right to a Section 303 hearing. *Id.* ¶ 47. T.R. did not understand that Dr. Barry and/or Havens deemed him to have waived the right to attend and participate in a Section 303 hearing. *Id.* ¶ 46. He alleges that he was not suicidal and did not otherwise meet the legal criteria for involuntary commitment; thus, he avers, the County would not have been able to prove a need for his commitment if he had a proper Section 303 hearing. *Id.* ¶ 48. T.R. was not released from Crozer Chester until Tuesday, May 31, 2011. *Id.* ¶ 49.

T.R. alleges that Havens' usual practice is to not introduce himself to the patients whom he has been appointed to represent when the patients are first presented to Dr. Barry. *Id.* ¶ 43. Instead, Havens' practice is to stand outside the office and listen to Dr. Barry's evaluation without the patient's knowledge; if the evaluation results in what Dr. Barry and Havens deem the patient's waiver of a hearing, Havens does not speak to the patient at all. *Id.* ¶¶ 43-45. Plaintiff avers that Havens does not advise the patient about the process, determine whether the patient understands the process, or advise the patient of his or her rights. *Id.* ¶ 45.

T.R. asserts that OBH and Akpunonu are responsible for "planning, coordinating, and monitoring due process proceedings under Section 303, consistent with their responsibilities for overseeing and analyzing involuntary inpatient utilization and for developing and implementing a plan for the same." *Id.* ¶ 52. T.R. also avers that Defendants Akpunonu and John and Jane Doe are the people who, on behalf of OBH, are responsible for ensuring that proceedings under Section 303 meet statutory and constitutional requirements. *Id.* ¶ 53, 54. T.R. concludes that

Defendants' failure to fulfill these responsibilities led to his allegedly unconstitutional involuntary commitment.  *Id.* ¶73.

## II.     LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (*citing Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" are not sufficient to survive a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable of the alleged misconduct."  *Id.* (citing *Twombly*, 550 U.S. at 556).  This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal,* 556 U.S. at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("All civil complaints must 'contain more than an unadorned the-defendant-unlawfully-harmed-me accusation.'") (*quoting Iqbal*, 556 U.S. at 678).  Moreover, "[t]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type of notice of claim which is contemplated by Rule 8 [of the Federal Rules of Civil Procedure]."  *Villegas v. Weinstein & Riley, P.S.*, 723 F. Supp. 2d 755, 756 (M.D. Pa. 2010) (quoting *Phillips*, 515 F.3d 232).

### III. DISCUSSION

#### A. 1983 claim against Akpunonu

Plaintiff claims that Akpunonu is liable in his individual capacity for depriving him of his liberty interest without due process of law. Am. Compl. at ¶ 69. Specifically, Plaintiff alleges that Akpunonu is responsible for arranging, coordinating, and expediting involuntary commitment proceedings and, in general, ensuring that those proceedings comply with procedural due process. *See id* ¶ 52-53. Plaintiff avers generally that Akpunonu "attends and is present at those hearings," *id* ¶ 53, but he does not aver specifically that Akpunonu was present on the date and time at issue here.

To sustain a 1983 action against an individual Defendant, a plaintiff must prove personal involvement in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). As the Third Circuit observed, there are several ways to make this showing:

> Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Id.* Here, Plaintiff has failed to show that Akpunonu was personally involved in the alleged deprivation of Plaintiff's rights. Plaintiff alleges that prior to his Section 303 commitment, Dr. Theodeore Barry, a psychiatrist, briefly interviewed Plaintiff. Am. Compl. ¶ 33. During the interview, Dr. Barry asked Plaintiff if he would agree to follow his doctor's treatment plan in lieu of a hearing. *Id.* ¶ 35. Plaintiff avers that he understood this to mean that if he consented to treatment, he would be discharged; thus, he agreed to follow the treatment plan. *Id.* ¶ 36-37.

However, Dr. Barry considered this to be a waiver of the patients' hearing and advised the presiding mental health review officer that Plaintiff had waived his right to a hearing. *Id.* ¶ 46-47 Plaintiff avers that Attorney Havens confirmed that Plaintiff had waived his hearing rights, even though Havens was not present for the interview and never spoke with Plaintiff. *Id.* Plaintiff was never told he had a right to a hearing or a right to counsel. *Id.*

It is clear from Plaintiff's Amended Complaint that the only persons personally involved in the alleged denial of Plaintiff's due process rights were Dr. Barry and Havens. The Amended Complaint contains no factual averments from which one may plausibly conclude that Akpunonu personally participated in the alleged violation of T.R.'s constitutional rights, nor does he plead that Dr. Barry and Havens acted with Akpunonu's personal direction, knowledge, or acquiescence to violate his constitutional rights.[2]  Accordingly, Plaintiff has not stated a claim against Akpunonu in his individual capacity, and such claim is dismissed. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (dismissing claim against individual defendant because complaint did not state that individual personally directed unlawful transfer or had "contemporaneous, personal knowledge" of the unlawful transfer and acquiesced in it); *see Robus v. Pa. Dep't of Corr.*, No. 04-2175, 2006 U.S. Dist. LEXIS 49943 (E.D. Pa. July 20, 2006) (general allegations of knowledge and personal involvement were insufficient to meet the

---

[2]  Plaintiff generally claims that Akpunonu attends 303 commitment hearings. Am. Compl. ¶ 53. However, as noted above, Plaintiff has not alleged that Akpunonu was present any time during the course of his 303 commitment, or provided facts showing that he acquiesced in the alleged deprivation of Plaintiff's rights. Thus, the Amended Complaint fails to allege "personal involvement" with sufficient particularity to maintain a claim against Akpunonu in his individual capacity. *See Klien v. County of Bucks*, No. 12-4809, 2013 U.S. Dist. LEXIS 47020, at *23 (E.D. Pa. Apr. 1, 2013) (*citing Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980) (holding civil rights complaint adequate where it states time, place, conduct, and persons responsible)).

specificity required to maintain a claim against defendants in their individual capacities); *Gaymon v. Esposito*, No. 11-4170, 2013 U.S. Dist. LEXIS 116159, at *39 (D. N. J. Aug. 16, 2013) (defendants who allegedly were responsible for implementing policies could not be sued in their individual capacity because they did not have personal knowledge or involvement).

### B. 1983 Claim against the County[3]

Plaintiff brings a municipal liability claim against the County, alleging that the County has an unconstitutional policy and/or custom of effecting Section 303 commitments that they know to be predicated on unknowing, involuntary waivers of the right to a hearing before extended involuntary commitment. Am. Compl. ¶¶ 63, 68.

A plaintiff can bring a § 1983 claim against a county only if the plaintiff proves "that the defendants maintained a policy or custom that caused a deprivation of constitutional rights."[4]

---

[3] The main thrust of the arguments in the instant motion to dismiss focus on whether the county agency OBH (and it's employee Akpunonu) were responsible for implementing policies to ensure due process. Plaintiff claims that Akpunonu is the person who, on behalf of OBH, is responsible for arranging and coordinating 303 commitment proceedings. Am. Compl. ¶ 53. It is clear that this allegation is against Akpunonu in his official – not his individual – capacity. It is well settled that such claims are subsumed within claims against the county. *See Gaymon*, 2013 U.S. Dist. LEXIS 116159, at *22-23 n.9 (claim that was premised on an unlawful action taken pursuant to a policy laid down by county employees more appropriately considered in conjunction with a *Monell* claim rather than against the individual employees). Accordingly, this Court has already dismissed with prejudice Plaintiff's claim against Akpunonu in his official capacity because such a claim is duplicative of the claim against the County. *See* (Doc. No. 21 n.1). I will address the arguments pertaining to the implementation of an unconstitutional policy and custom by the County below.

[4] A policy can be established when "a decision maker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007) (internal citation, quotation marks, and brackets omitted). Without a formal policy, custom can be established when "a given course of conduct . . . is so well settled and permanent as virtually to constitute law." *Id.* at 156 (quoted case and internal quotation marks omitted).

*Doby v. DeCrescenzo*, 171 F.3d 858, 867 (3d Cir. 1999) (citing *Monell v. Department of Social Servs.*, 436 U.S. 658, 694 (1978)).  Here, Plaintiff claims that Akpunonu and OBH generally (hereinafter referred to as the "County") are responsible for, inter alia, ensuring that involuntary commitment proceedings comply with procedural due process, which they have failed to do.  The County argues that this claim must be dismissed because, as a matter of Pennsylvania statutory law, it is the responsibility of the state and the committing facility (not the County) to implement polices and procedures that comply with procedural due process.[5]  County Mot. at 16-18.

"[F]or the ordinary citizen, commitment to a mental hospital produces a massive curtailment of liberty, and in consequence, requires due process protection." *Vitek v. Jones*, 445 U.S. 480, 491-92 (1980) (internal citations and quotations omitted).  In Pennsylvania, the MHPA

---

[5] The County also argues that the Complaint should be dismissed because Plaintiff has failed to properly identify the requisite "policymaker," arguing that a "legal specialist" such as Akpunonu does not have policymaking authority.  County Mot. at 18.  While the determination of whether an individual is a "policymaker" is a legal one, a plaintiff is still obligated to plead that the individual in question possesses final policymaking authority.  *See Santiago v. Warminster Twp.*, 629 F.3d 121, 135 n.11 (3d Cir. 2010) .  In this case, Plaintiff apparently claims that Akpunonu is the policymaker, arguing as a practical reality, it is Delaware County and OBH employees – Akpunonu and the Does – who are responsible for coordinating and effecting these proceedings.  *See* Am. Compl. ¶ 78.  The County points to the absence of any language in the MHPA allowing for a "mental health legal specialist" to possess final policymaking authority.  However, a municipality may be liable if it delegates policymaking authority to an individual.  *See LaVerdure v. County of Montgomery*, 324 F.3d 123, 125-126 (3d Cir. 2003).  Such an issue cannot be resolved at this time without further discovery.  *See Carter v. City of Philadelphia*, 181 F.3d 339, 357-358 (3d Cir. 1999) (requiring a plaintiff to "identify a particular policy and attribute it to a policymaker, at the pleading state without benefit of discovery, is unduly harsh); *Lieberman v. Marino*, No. 06-2745, 2007 U.S. Dist. LEXIS 17735, at *19-20 (E.D. Pa. Mar. 13, 2007) (same); *see also Short v. Glover*, No. 03-324, 2003 U.S. Dist. LEXIS 19538, at *13 (E.D. Tex. Nov. 3, 2003) (finding argument that plaintiff cannot identify a specific policymaker more appropriately considered at summary judgment stage, after the plaintiff takes discovery).  Accordingly, because it is plausible that Akpunonu was delegated final policymaking authority, Plaintiff's *Monell* claim will not be dismissed on such a basis.

"[governs] county mental health programs and procedures for commitment of mentally ill persons." *In re Bishop*, 717 A.2d 1114, 1117 (Pa. Commw. Ct. 1998). Section 303 governs the procedures involving extended involuntary emergency treatment. 50 Pa. Con. Stat. § 7303 (1978). The relevant parts of Section 303 state:

> (a) Persons Subject to Extended Involuntary Emergency Treatment. – Application for extended involuntary emergency treatment may be made for any person who is being treated pursuant to section 302 whenever the facility determines that the need for emergency treatment is likely to extend beyond 120 hours. The application shall be filed forthwith in the court of common pleas, and shall state the grounds on which extended emergency treatment is believed to be necessary. The application shall state the name of any examining physician and the substance of his opinion regarding the mental condition of the person.
>
> (b) Appointment of Counsel and Scheduling of Informal Hearing. – Upon receiving such application, *the court of common pleas shall appoint an attorney* who shall represent the person unless it shall appear that the person can afford, and desires to have, private representation. Within 24 hours after the application is filed, an informal hearing shall be conducted by a judge or by a mental health review officer and, if practicable, shall be held at the facility.

§ 7303(a), (b) (emphasis added). A review of the statute reveals that, in some instances, the act calls for a county and a facility to work together in determining the appropriate plan and procedure for involuntarily committing patients. Indeed, as the Pennsylvania Commonwealth Court observed

> The Mental Health Retardation Act of 1966 (Act), 50 P.S. § 4107-4704, and the Mental Health Procedure Act (MHPA), 50 P.S. §§ 7201-7301, contain ample provisions for coordination . . . among the <u>county</u> administrator, <u>county mental health authorities</u>, and the approved facilities designated to provide treatment . . . as to admissions policies and patient-appropriate treatment.

*In re Bishop*, 717 A.2d at 1118. Similarly, the MHPA mandates that a county may not designate a facility for involuntary emergency examination until it has ensured the facility has a plan to

utilize county resources in such a way as to meet the requirements of the MHPA. *See* 55 Pa. Code. § 5100.71; *see also* § 5100.21(a) (The Pennsylvania Department of Welfare works in conjunction with county agencies to implement the MHPA). With respect to Section 303 commitments, the Pennsylvania Code states that the county administrator, when designated by the court, "shall coordinate . . . all hearings and file all applications and certifications under the act." 55 Pa. Code. § 5100.21(e); *see also* § 5100.87 (discussing certifications generally)

In *Doby v. DeCrescenzo*, the Third Circuit discussed whether an alleged unconstitutional procedure implementing § 7302 (for emergency involuntary treatment) could be considered a county, rather than a state, policy. 171 F.3d 858, 868 (3d Cir. 1999). Without directly addressing this issue, the Court proceeded to address the claim against the county, noting that the plaintiffs "clearly have framed their arguments to focus on the actions of the county." *Id* at 868. As is the case here, the plaintiff's did not "argue that [the MHPA] as written is itself unconstitutional; rather, they claim that LVF and the county have enforced it in an unconstitutional manner . . . ." *Id.*

In this case, the alleged constitutional deprivation took place pursuant to § 303, rather than § 302. The MHPA appears to be more specific in the context of § 303 commitments, setting forth greater procedural safeguards – i.e. counsel and a hearing – and identifying some individuals who must take action during § 303 proceedings.[6] *See Commonwealth v. C.B.*, 307 Pa. Super. 176, 181, 452 A.2d 1372, 1374 (1982) (the MHPA "evidences a legislative intent to

---

[6] The County repeatedly asserts that it is the Facility's responsibility to take certain actions during § 303 proceedings. However, the Pennsylvania mental health statutes provide that the County Administrator must arrange for all professional and non-professional staff at designated facilities. *See e.g.*, *In re Bishop*, 717 A.2d at 1118. Thus, the exact division of responsibility cannot be determined solely based on the statute.

create a treatment scheme under which the patient's procedural projections expand progressively as the deprivation of his liberty gradually increases."). However, the Pennsylvania Code contemplates at least some role for the county, explicitly stating that the county administrator "shall coordinate . . . all hearings and file all applications and certifications under the act." 55 Pa. Code Sec. 5100.21. Notably, courts within this district have allowed § 1983 claims arising from involuntary commitments against counties, including Delaware County. *See e.g.*, *Di Cola v. Fulmele*, 93-0263, 1993 U.S. Dist. LEXIS 8825 (E.D. Pa. July 2, 1993) (recognized that "[t]he Office of Mental Health, an agency of Delaware County, is responsible for the administration of the Pennsylvania MHPA.").

In conclusion, it is plausible that the County was responsible for coordinating the proceedings in such a manner as to unlawfully deprive Plaintiff of his procedural due process rights. Defendants argument that the County has no responsibility in § 303 commitments cannot be accepted based solely on the text of the MHPA, nor can we decide this issue without at least a minimal development of the factual record. Importantly, the statute provides for some participation by the County in implementing the MHPA, and ample authority exists recognizing the roles that the County and its agencies play in administering the MHPA. *See Di Cola v. Fulmele*, 93-0263, 1993 U.S. Dist. LEXIS 8825 (E.D. Pa. July 2, 1993) (denying Delaware County's motion to dismiss procedural due process claim under the MHPA); *Marcavage v. Bd. of Trs.*, No. 00-5362, 2004 U.S. Dist. LEXIS 9471, at *26 (E.D. Pa. May 21, 2004) ("The Third Circuit has observed that the MHPA procedures was created to allow the counties to handle emergency situations.") (*citing Doby*, 171 F.3d at 870 ) (further citations omitted); *see also In re K.L.S.*, 934 A.2d 1244, 1248 n.4 (Pa. 2007) (noting that "the Pennsylvania Department of Public

Welfare administers the MHPA in conjunction with county agencies" and recognizing that the procedures implementing the MHPA differ among the counties).

We thus conclude that the issue is not ripe for disposition at the motion to dismiss stage; discovery is needed to develop a factual record. Accordingly, the County's Motion to Dismiss Plaintiff's *Monell* claim is Denied.[7]

### C. Claims brought under the ADA and RA

Plaintiff brings a claim under the Americans with Disability Act, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, against the County. Plaintiff alleges that the County's policy of coordinating and implementing involuntary commitment proceedings that fail to secure a patients rights to counsel and a hearing unlawfully discriminates against the mentally ill by excluding them from the benefits of the County's Psychiatric Emergency Commitment Procedures under Section 303 of the MHPA. *See* Am. Compl. ¶ 87-92. Similar to

---

[7] Alternatively, the County argues that this case can be dismissed under the favorable termination rule of *Heck v. Humphrey,* 512 U.S. 477 (1994) because Plaintiff has not shown that his involuntary commitment was improper. Defendants concede that the Third Circuit has yet to address whether *Heck* applies to 1983 claims brought as a result of involuntary commitments under the MHPA. At this stage of the proceedings, this Court will not dismiss the instant case on such a basis.

Similarly, Defendants contend that the case should be dismissed under the *Rooker-Feldman* doctrine because Plaintiff's attempt to expunge his involuntary commitment in the state court of common pleas was denied. The *Rooker-Feldman* doctrine deprives a federal court of subject matter jurisdiction "to review final adjudications of a state's highest court or to evaluate constitutional claims that are inextricably intertwined with the state court's proceedings." *Guarino v. Larsen*, 11 F.3d 1151, 1156 (3d Cir. 1993).

Here, Plaintiff sought to expunge the record of his § 7302 involuntary commitment pursuant to 18 Pa. C.S.A. § 6111.1. The instant suit seeks monetary damages for constitutional violations allegedly arising from his § 7303 commitment. Addressing the constitutionality of Plaintiff's § 7303 commitment in no way implicates the issue of whether Plaintiff's initial involuntary commitment should be expunged. *See in re Jacobs*, 2011 PA Super. 39, 15 A.3d 509 (Pa. Super. 2011) (noting that a § 7303 proceeding is an entirely separate judicial proceeding from § 7302).

their argument in support of dismissing Plaintiff's 1983 claim, the County argues that the ADA and RA claims should be dismissed because as a matter of Pennsylvania statutory law, the County has no role in appointing counsel or ensuring a Plaintiff receives a hearing. County Mot. at 18.

As noted above, the County's argument that they play no role in § 303 commitments cannot be accepted based solely on the text of the MHPA. It is plausible that the County was responsible for coordinating the alleged procedure, and did so in a discriminatory fashion, thus violating rights protected by the ADA and the RA. Accordingly, the County's Motion to Dismiss Plaintiff's ADA and RA claim is Denied.

### D. T.R.'s Section 1983 Claim Against Havens

Havens argues that he is entitled to the dismissal of T.R.'s Section 1983 claim because he is not a state actor. (Def.'s Br. at 5)[8] I agree.

Actions of private individuals can constitute state action when "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as the State itself." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (citing *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005)). There are three ways to determine whether a private party has functioned as a state actor, by considering: (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the

---

[8] Havens also argues that T.R.'s legal malpractice state law claim must be dismissed because, if the Section 1983 claim is dismissed, this Court would no longer have subject matter jurisdiction over his state law claim. (Def.'s Br. at 4-5.) I discuss this issue *infra*.

private party has acted with the help of or in concert with state officials"[9]; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence on the acting party that it must be recognized as a joint participant in the challenged activity." *Id.* (internal citations omitted). It is well settled that court-appointed attorneys are not state actors. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981).

T.R. nonetheless contends that he has satisfied the "acting in concert" test because his Complaint alleges that Havens and OBH acted in concert to deprive him of his constitutional rights. Pl.'s Resp. at 2. However, T.R. does not allege any specific facts to support his legal conclusion that OBH and Havens were working in concert to deprive him of his rights. He has alleged only that: (1) Havens acted in concert with the State to systematically deny T.R. and others like him of their procedural due process rights by conducting § 303 proceedings in which people in T.R.'s position are deemed – and averred by Havens – to have waived their rights without the opportunity to consult with their court-appointed counsel (Am. Compl. ¶ 61), and (2) the County has known for several years that Havens has a practice of not properly representing his clients. Am. Compl. ¶ 66. The first allegation is itself a legal conclusion that is insufficient under *Twombly*. *Iqbal*, 556 U.S. at 663 (2009). The second statement merely states that OBH had knowledge of Havens' allegedly unlawful practices. It does not allege any facts to plausibly create a reasonable inference of joint action between Havens and OBH so that one may infer that Havens' actions replaced the judgment of public officials. *See Cahill ex rel. Cahill v. Live Nation*, 866 F. Supp. 2d 503, 512 (W.D. Pa. 2011) (dismissing claim against private corporation

---

[9] This test is also referred to as the "joint action test." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982) (holding that where a private party is a "willful participant in joint action with the State or its agents" it may be liable under § 1983).

where there is was no allegation that the judgment of the state actor was replaced by the judgment of private party).

Accordingly, I conclude that T.R.'s only federal law claim against Havens must be dismissed. The Amended Complaint does not assert the requisite facts to support the contention that Havens functioned as a state actor.

Because there are no viable federal claims asserted against Havens, I decline to exercise supplemental jurisdiction over T.R.'s state law legal malpractice claim against Havens. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639, 129 S. Ct. 1862, 173 L. Ed. 2d 843 (2009) (court's exercise of supplemental jurisdiction over a claim is "purely discretionary); *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) (holding that a district court may decline to exercise jurisdiction over a supplemental state law claim if it has dismissed the federal claim or claims upon which the lawsuit was based); *Warren v. Boggio*, No. 11-6050, 2012 U.S. Dist. LEXIS 106811 (E.D. Pa July 31, 2012); (declining to exercise supplemental jurisdiction over state law malpractice claims after dismissing 1983 claims); *Culver v. Specter*, No. 11-2205, 2013 U.S. Dist. LEXIS 141425 (M.D. Pa. Sept. 30, 2013) (declining to exercise supplemental jurisdiction over a state malpractice claim against an individual defendant even though the court retained subject matter jurisdiction over 1983 claims against other defendants).

## IV.   CONCLUSION

Plaintiff has failed to plead facts sufficient to support the claim set forth in Counts I against Akpunonu in his individual capacity. However, Plaintiff has set forth a plausible claim

for relief against the County in Count I and Count II.  Thus, the Motion to Dismiss is **GRANTED** as to the claims against Defendant Akpunonu in his individual capacity and **DENIED** as to the *Monell* claim (Count I) and the ADA and RA claim (Count II) against the County.  Defendant Havens's Motion to Dismiss (Doc. No. 24) is **GRANTED**.

An appropriate Order follows.

BY THE COURT:

  /s/ Lynne A. Sitarski

LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE